UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | | |
|---|---|---|
| CHEVRON INTELLECTUAL PROPERTY LLC and CHEVRON U.S.A. INC., | : : : : | Case No._____ |
| Plaintiffs, | : : | **COMPLAINT** |
| v. | : : | |
| ALI ADLE d/b/a BROADWAY SUPER GASOLINE, | : : : | |
| Defendant. | : | |

For their Complaint against Defendant Ali Adle d/b/a Broadway Super Gasoline ("Adle"), Plaintiffs Chevron Intellectual Property LLC and Chevron U.S.A. Inc. ("Chevron" or "Plaintiffs") allege and state as follows:

**INTRODUCTION**

1. This is an action for federal trademark counterfeiting, trademark infringement, trademark dilution, and unfair competition under the Lanham Act (15 U.S.C. § 1051, *et seq.*); and for unfair competition, unfair trade practices, and dilution under Minnesota statutory and common law. Plaintiffs are seeking a permanent injunction, damages, profits, treble damages or profits, attorneys' fees, costs, and other appropriate relief. Plaintiffs, appearing through their undersigned counsel, state and allege as follows:

## JURISDICTION

2. This Court is vested with jurisdiction over the parties and the subject matter of the action under 15 U.S.C. § 1121, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over the claims in this Complaint which arise under the statutory and common law of the State of Minnesota pursuant to 28 U.S.C. § 1367(a), since the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## VENUE

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b). The acts of infringement that are the subject of this litigation occurred and are occurring in the District of Minnesota; the claims alleged in this action arose in the District of Minnesota; and victims of Defendant's infringing activities may be found in the District of Minnesota.

## PARTIES

5. Plaintiff Chevron Intellectual Property LLC is a Delaware limited liability company, with a principal place of business at 6001 Bollinger Canyon Road, San Ramon, California 94583.

6. Plaintiff Chevron U.S.A. Inc. is a Pennsylvania corporation, with a principal place of business at 6001 Bollinger Canyon Road, San Ramon, California 94583.

7. On information and belief Adle owns and operates an automobile gasoline service station in Minnesota and located at 1005 N Broadway, Rochester, MN 55906. On information and belief, Adle resides at 3137 Lake Street, Rochester, MN 55901

## CHEVRON'S BUSINESS

8. In 2001, Chevron merged with Texaco Inc. and thereby acquired ownership of the Texaco brand, including its federally registered trademark registrations (the "Texaco Marks"). Within the Chevron corporate family, Chevron Intellectual Property LLC is the owner of, and Chevron U.S.A. Inc. is the primary licensee of, among others, the following federally registered Texaco Marks:

> **Service Station Canopy Design**, U.S. Trademark Registration No. 2,259,016, registered July 6, 1999, for "gas station services;" and
>
> **Gasoline Pump Design**, U.S. Trademark Registration No. 2,251,166, and U.S. Trademark Registration No. 3,236,115 registered June 8, 1999, for "gas station services."

9. These Registrations are valid, subsisting, and have been registered for over five years and/or are incontestable pursuant to 15 U.S.C. § 1065. (See Exhibits 1, 2, 3 and 4, which are true copies of the Registration Nos. 2,259,016; 2,251,166; 2,264,612; and 1,315,019.)

10. For many years now, licensee Chevron U.S.A. Inc. and its predecessor Texaco Inc. have been engaged in the operation of TEXACO-brand gasoline service stations. Since the merger between the Chevron and Texaco companies in 2001, Chevron

has owned the Texaco Marks comprising the TEXACO and Star T Design trademarks and all related word marks, logos, and pump, canopy and building color designs and patterns that comprise a TEXACO brand service facility. For a period of time after the 2001 merger, Chevron licensed the use of the Texaco Marks through Shell Oil Company and other related companies. On June 30, 2006, those licensing arrangements terminated such that Shell and other companies were no longer involved in the licensing of the Texaco Marks.

11.    Chevron's authorized TEXACO-branded stations provide gasoline and petroleum products to the owners of cars, SUVs, light trucks, and other motor vehicles. Chevron's authorized TEXACO-branded stations sell TEXACO brand gasoline. Many of the stations also provide vehicle maintenance services, vehicle tune-up services, oil change services, car wash services, and/or retail convenience store services. There are over 2,400 TEXACO-branded stations nationwide licensed under the federally registered Texaco Marks and the trademarks and/or unique station appearance shown in those registrations.

12.    Chevron's TEXACO mark for gasoline, gas station services and related goods and services has been in use since at least as early as 1911. Chevron has expended large sums of money over many years in the advertising of goods and services under its TEXACO mark throughout the United States, including California. As a result of this long-term use of the TEXACO mark, this mark has become well known to the trade and the general public throughout the United States, and Chevron has established extensive goodwill and public recognition in and to the inherently distinctive TEXACO mark as an

exclusive identification of the goods and services of Chevron.  The TEXACO mark has also become famous.

13. Chevron has used some variation of a Star Design mark since at least as early as 1903. The current version of this mark, the Star T Design mark, has been in continuous use, both alone and in combination with the TEXACO mark, since at least as early as 1981.  As a result of Chevron's longstanding use of the Star T Design mark and related Star Design marks, this mark has become well known to the trade and the general public throughout the United States, and Chevron has established extensive goodwill and public recognition in and to the inherently distinctive Star T Design mark as an exclusive identification of the services of Chevron.  The Star T Design mark has also become famous.

14. Licensed TEXACO-branded service station facilities are authorized to use and prominently display exterior and interior signage that bear Chevron's registered TEXACO and Star T Design trademarks. These licensed facilities typically also use and display additional materials including banners, posters, mats, stationery, clocks, and business cards that bear the Texaco Marks.

15. The buildings and premises of many licensed TEXACO-branded facilities often also have a distinctive and proprietary exterior appearance unique to TEXACO-branded facilities.  This distinctive appearance comprises some or all of the following elements: i) (canopy) a rigid weather canopy over the gasoline pumps with a black background and red border along the bottom edge of the side of the canopy, the TEXACO and Star T Design marks on the canopy, a series of vertical red lines forming a

gradient design along the canopy, and gray poles supporting the canopy; and ii) (pumps) red and black gasoline pumps. (See Exhibits 1, 2, 3 and 4 to this Complaint.) These distinctive elements are federally protected and covered by U.S. Registration Nos. 2,259,016; 2,251,166; 2,264,612; and 1,315,019.

16. Authorized TEXACO-branded facilities have displayed this distinctive exterior trade dress since at least as early as 1981. As a result of this long term use of the TEXACO exterior trade dress, the trade dress has become well known to the trade and the general public throughout the United States, and Chevron has established extensive goodwill and public recognition in and to the distinctive exterior trade dress as an identification of Chevron's goods and services.

## DEFENDANT'S IMPROPER CONDUCT

17. Upon information and belief, Defendant once operated a licensed, authorized TEXACO-branded service station and sold authentic TEXACO brand gasoline and related products. On information and belief, over that time Defendant serviced many hundreds of vehicles under one or more of Chevron's Texaco Marks. At least by September 10, 2007, Defendant was no longer selling or supplying authentic TEXACO brand gasoline or products and was no longer an authorized licensee of Chevron's Texaco Marks comprising the TEXACO and Star T Design marks and Chevron's distinctive exterior trade dress. After September 10, 2007 Defendant was obligated to fully remove the Texaco Marks from its facility and property, however, Defendant has refused to remove the Texaco Marks at its facility.

18.     As a result, Defendant is continuing to falsely operate its facility as a TEXACO-branded facility and to sell non-authentic gasoline falsely as a TEXACO product, all without authorization or license from Chevron.

19.     Defendant has continued to display and use the infringing signage on its property and at its business located at 1005 N Broadway, Rochester, Minnesota 55906. On information and belief, the products and/or services being sold under the infringing trademarks and/or trade dress in this action are being sold and/or distributed at 1005 N Broadway, Rochester, Minnesota 55906.  In addition, since Defendant is no longer selling TEXACO brand gasoline, Defendant is falsely creating the impression, through the use of the Texaco Marks, that its gasoline is TEXACO brand gasoline and thereby deceiving and defrauding customers.  Defendant's improper conduct includes use of the Texaco Marks as displayed below:

| **Plaintiffs' Trademarks** | **Defendant's Use** |
|---|---|
| Reg. No. 2,259,016:<br><br>[image of canopy trademark drawing]<br><br>The mark consists of a red and black gasoline service station canopy with gray poles. The dotted outline of the canopy and the poles is not part of the mark but is merely intended to show the position of the mark. The drawing is lined for the colors red and gray. | [photograph of defendant's gas station with red canopy, labeled "Broadway Grocery & Mall"] |

20. Defendant is not licensed, authorized or otherwise permitted by Chevron to use or otherwise display Chevron's distinctive exterior trade dress, and/or any other marks or designations of Chevron, in such a way as to suggest an affiliation, sponsorship, license, connection, or other association with Chevron.

## EFFECT OF DEFENDANT'S ACTIVITIES ON CHEVRON AND THE CONSUMING PUBLIC

21. Defendant's past and continuing unauthorized use of Chevron's Texaco Marks is likely to cause confusion, mistake, and/or deceive customers and potential customers of the respective parties as to some presumed but nonexistent affiliation, connection, sponsorship, and/or association of Defendant with Chevron, and/or as to the origin, sponsorship, or approval of Defendant's products and services by Chevron.

22. Defendant's unauthorized use of Chevron's Texaco Marks suggests to the purchasing public that Defendant's products and services originate with Chevron, and/or that Defendant and/or its products and services are affiliated, connected, or associated with Chevron, or are sponsored, endorsed, or approved by Chevron, when in fact they are not.

23. Defendant's unauthorized use of Chevron's Texaco Marks falsely designates the origin of Defendant's products and services and falsely and misleadingly describes and represents with respect to Defendant and its products and services.

24. Defendant's unauthorized use of Chevron's Texaco Marks enables the Defendant to call attention to its business and products and services, and to trade on and receive the benefit of the goodwill built up at great labor and expense over many, many

years by Chevron and its predecessor Texaco, and to gain acceptance for its products and services not on its own merits, but as a free ride on the reputation and goodwill of Chevron and its well-known and valuable marks.

25.     Defendant is being unjustly enriched at the expense of Chevron and Chevron's licensees by Defendant's unauthorized use of Chevron's Texaco Marks.

26.     Defendant's unauthorized use of Chevron's Texaco Marks places the valuable reputation and goodwill of Chevron's trademarks improperly in the hands of Defendant.

27.     Defendant's ongoing unauthorized use of Chevron's Texaco Marks as still in use and prominently displayed at a non-licensed facility is falsely promoting that facility and property as still being affiliated with Chevron and damaging Chevron's goodwill by falsely associating Chevron with that unlicensed facility.

28.     Defendant has ignored Chevron's numerous written requests to cease its wrongful conduct.  Unless this Court restrains these acts of Defendant, it will continue to cause irreparable injury to Chevron and to the public, for which there is no adequate remedy at law.

### COUNT I
**(Infringement of Federally Registered Trademarks)**
**(15 U.S.C. § 1114)**

29.     Chevron repeats, reiterates, and realleges each of the preceding paragraphs as if fully set forth herein.

30. Defendant is marketing, offering for sale, and selling into interstate commerce gasoline and related gas station services and other automotive-related services and products in association with its unauthorized use of Chevron's Texaco Marks.

31. Defendant has infringed and continues to infringe Chevron's federally registered Texaco Marks set forth above under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

32. The use and display by Defendant of Chevron's Texaco Marks has caused and will continue to cause serious and irreparable injury to the reputation and goodwill of Chevron for which Chevron is without adequate remedy at law.  Defendant's use of Chevron's Texaco Marks creates the false and misleading impression that Defendant's goods and services are manufactured and/or distributed by Chevron, and that the goods and services are associated or connected with Chevron or have the sponsorship, approval or endorsement of Chevron.

33. Because of Defendant's infringement, Chevron has been injured and damaged and is entitled to recover damages, Defendant's profits, and costs pursuant to 15 U.S.C. § 1117.

34. Defendant used and is using and displaying Chevron's Texaco Marks with full knowledge of Chevron's rights and in bad faith with willful and deliberate intent to trade on Chevron's substantial recognition, reputation, and goodwill.  In view of the willful nature of Defendant's infringement and unfair competition, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## COUNT II
### (Infringement of Trademark Rights)
### (15 U.S.C. § 1125(a)-(c))

35. Chevron repeats, reiterates, and realleges paragraphs 1 through 34 above, as if fully set forth herein.

36. Defendant is marketing, offering for sale, and selling into interstate commerce gasoline and related gas station services and other automotive-related services and products in association with its unauthorized use of Chevron's Texaco Marks.

37. Such activity of Defendant misrepresents the nature, characteristics, or qualities of Defendant's goods or services, and constitutes a false designation of origin, false or misleading description or representation of fact, each of which is likely to cause confusion, mistake, or deception among consumers that the Defendant's business is licensed, sponsored, approved, associated with, or otherwise entitled to use Chevron's trade dress marks, when, in fact, Defendant has no authorization or permission from Chevron, and Defendant does not supply, sell or dispense Chevron products.

38. The conduct of Defendant constitutes unfair competition, false advertising, false designation of origin, false description, and false representation that Defendant's facility and products are sponsored, approved, or authorized by Chevron, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

39. As a result of the Defendant's activities, Chevron has lost sales and profits and has suffered and will continue to suffer irreparable injury to its business reputation and goodwill. Chevron's remedy at law is not by itself adequate to compensate it for injuries inflicted and threatened by Defendant.

40. By reason of Defendant's acts of unfair competition, false designation, description, and representation described above, Chevron has suffered, and will continue to suffer, substantial damage to its business reputation and goodwill, as well as diversion of trade and loss of profits in an amount not yet fully ascertained.

41. Defendant's acts of unfair competition, false designation, description, and representation are causing Chevron irreparable injury. Defendant continues to commit such acts, and, unless restrained and enjoined, will continue to do so, to Chevron's irreparable injury. Chevron's remedy at law is not adequate by itself to compensate it for injuries inflicted and threatened by Defendant.

42. Because of Defendant's conduct in violation of Section 43(a), Chevron is being injured and damaged and is entitled to recover damages, Defendant's profits, and costs pursuant to 15 U.S.C. § 1117.

43. Defendant used and is using Chevron's Texaco Marks with full knowledge of Chevron's rights, and in bad faith with willful and deliberate intent to trade on Chevron's substantial recognition, reputation, and goodwill. In view of the willful nature of Defendant's infringement and unfair competition, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

### COUNT III
**(Infringement of Common Law Trademark Rights – Trade Dress)**
**(15 U.S.C. §1125(a))**

44. Chevron repeats, reiterates, and realleges paragraphs 1 through 43 above, as if fully set forth herein.

45. Defendant is supplying, marketing, offering for sale, and selling into interstate commerce gasoline service station and other automotive-related services and products from its facility at 15 121st Avenue NW, Coon Rapids, MN 55448. Defendant's canopy, pumps and/or overall facility has an exterior trade dress which is confusingly similar to the distinctive exterior trade dress used by Chevron's authorized TEXACO facilities and which is covered by one or more of Chevron's trade dress marks.

46. Defendant's use of an exterior trade dress similar to the distinctive trade dress used by Chevron's TEXACO facilities is likely to cause confusion, mistake, or deception among consumers and to cause consumers to mistakenly believe that Defendant's property and business is licensed, sponsored, approved, or otherwise associated with Chevron.

47. The conduct of Defendant constitutes trade dress infringement, false designation of origin, unfair competition, and false representation that Defendant's services and products are sponsored, approved, or authorized by Chevron, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

48. As a result of the Defendant's activities, Chevron has lost sales and profits and has suffered and will continue to suffer irreparable injury to its business reputation and goodwill. Chevron's remedy at law is not by itself adequate to compensate it for injuries inflicted and threatened by Defendant.

49. By reason of Defendant's acts of false designation, description, and representation described above, Chevron has suffered, and will continue to suffer,

substantial damage to its business reputation and goodwill, as well as diversion of trade and loss of profits in an amount not yet fully ascertained.

50. Defendant's acts of infringement, unfair competition, and false designation have caused Chevron irreparable injury. Defendant continues to commit such acts, and unless restrained and enjoined, will continue to do so, to Chevron's irreparable injury. Chevron's remedy at law is not adequate by itself to compensate it for injuries inflicted and threatened by Defendant.

51. Because of Defendant's conduct in violation of Section 43(a), Chevron has been injured and damaged and is entitled to recover damages, Defendant's profits, and costs pursuant to 15 U.S.C. § 1117.

52. Defendant is using Chevron's distinctive exterior trade dress with full knowledge of Chevron's rights, and in bad faith with willful and deliberate intent to trade on Chevron's substantial recognition, reputation, and goodwill.  In view of the willful nature of Defendant's infringement and unfair competition, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

### COUNT IV
### (Trademark Counterfeiting)
### (15 U.S.C. § 1114(1)(a))

53. Chevron repeats, reiterates, and realleges paragraphs 1 through 52 above, as if fully set forth herein.

54. Defendant is infringing Chevron's federally registered trademarks through its use in commerce of a reproduction, counterfeit, copy, or colorable imitation of the

Texaco Marks, in the connection with the sale, offering for sale, marketing, distribution, or advertising of gas station services and related automotive services and products, with such use being likely to cause confusion, to cause mistake, or to deceive the public.

55. Defendant is intentionally using the Texaco Marks, knowing the marks are counterfeit. Defendant is intentionally infringing upon Chevron's trademark rights in order to further its own business enterprise.

56. Because of Defendant's intentional use of counterfeit marks, Chevron is being injured and damaged, and is entitled to recover costs, treble damages or profits, whichever is greater, and reasonable attorneys' fees under 15 U.S.C. § 1117(b).

57. The counterfeiting by Defendant of Chevron's trademarks has caused and will continue to cause serious and irreparable injury to the reputation and goodwill of Chevron for which Chevron is without adequate remedy at law.

### COUNT V
### (Violation of Minnesota Deceptive Trade Practices Act, Minn. Stat. §325D.44)

58. Chevron repeats, reiterates, and realleges paragraphs 1 through 57 above, as if fully set forth herein.

59. The above acts by Defendant constitute deceptive trade practices in violation of Minnesota Statutes §325D.44.

60. The acts and conduct of Defendant alleged herein are likely to cause confusion in the trade as to the source of Defendant's goods and services and are likely to lead the public to mistakenly believe that Defendant is in some way connected with Chevron.

61. These wrongful acts of Defendant have proximately caused and will continue to cause Chevron substantial injury, including loss of customers, dilution of its goodwill, confusion for potential customers, injury to its reputation, and diminution in value of its trademarks and trade dress. These actions will cause imminent irreparable harm and injury to Chevron, the amount of which will be difficult to ascertain, if they continue. Chevron is without an adequate remedy at law.

62. As a direct and proximate result of the Defendant's deceptive and/or unfair competitive acts, Chevron has been injured and damaged and is entitled to injunctive relief and to recover actual damages, costs, and reasonable attorneys' fees. Chevron is also entitled to recover from Defendant the gains, profits, and advantages it has obtained as a result of its wrongful acts as hereinabove alleged. Chevron is unable to ascertain at this time the full extent of the gains, profits, and advantages Defendant has obtained by reason of its aforesaid unlawful conduct.

63. Because Defendant's actions have been committed willfully, maliciously and intentionally, Chevron is entitled to recover costs of the action and reasonable attorneys' fees pursuant to Section 325D.45 of the Minnesota Statutes.

## COUNT VI
**(Violation of Minnesota's Common Law of Unfair Competition)**

64. Chevron repeats, reiterates, and realleges paragraphs 1 through 63 above, as if fully set forth herein.

65. The acts and conduct of Defendant alleged herein are likely to cause confusion in the trade as to the source of Defendant's goods and services and are likely to

lead the public to mistakenly believe that Defendant is in some way connected with Chevron.

66. Defendant's actions constitute intentional and willful unfair competition and palming off in violation of the common law of Minnesota. As set forth more fully above, Chevron has invested a substantial amount of time, skill and money in its product and developing its marks. Defendant's acts and conduct in palming off the marks were done without the authorization or consent of Chevron at little or no cost to Defendant.

67. The intentional and willful unfair competition and palming off by Defendant has caused and will continue to cause serious and irreparable injury to the reputation and goodwill of Chevron for which Chevron is without adequate remedy at law.

68. As a direct and proximate result of the Defendant's unfair competitive acts, Chevron has been injured and damaged and is entitled to injunctive relief and to recover actual damages, costs, and reasonable attorneys' fees.

69. Defendant's conduct was fraudulent, oppressive, malicious, and in conscious disregard of the rights of Chevron.

## COUNT VII
### (Unjust Enrichment)

70. Chevron repeats, reiterates, and realleges paragraphs 1 through 69 above, as if fully set forth herein.

71. The acts of Defendant complained of herein constitute unjust enrichment of Defendant at the expense of Chevron.

## **PRAYER FOR RELIEF**

WHEREFORE, Chevron prays for the following relief:

1. That this Court grant a permanent injunction pursuant to the powers granted it under 15 U.S.C. § 1116 and at common law, enjoining and restraining Defendant and its officers, principals, agents, servants, and employees directly or indirectly (i) from using or displaying any of Chevron's Texaco Marks or any similar variations thereof (including, but not limited to, all of Defendant's exterior and interior signage, building fascia appearance, canopies, pumps, clocks, banners and labeling, trade names, advertising, invoices, stationery, directory listings, domain names, or websites, and (ii) from continuing any and all acts of deception, conspiracy, or unfair competition as alleged herein;

2. That this Court, pursuant to the powers granted it under 15 U.S.C. § 1116(d), issue an order pursuant to 15 U.S.C. § 1116(a) providing for the seizure and removal from its premises of all Defendant's signage, property and goods bearing counterfeit trademarks, the means of making such marks and records documenting the manufacture, sale, or receipt of things involved in such violation;

3. That this Court, pursuant to the powers granted it under 15 U.S.C. § 1117(b), award to Chevron and against Defendant, treble damages or profits, whichever is greater, and reasonable attorneys' fees because there has been intentional use of counterfeit marks or designations;

4. That this Court, pursuant to the powers granted it under 15 U.S.C. § 1117, award to Chevron and against Defendant, damages, profits, and costs;

5.	That this Court, pursuant to the powers granted it under 15 U.S.C. § 1117, award to Chevron and against Defendant, Chevron's reasonable attorneys' fees because this is an exceptional case;

6.	That this Court, pursuant to the powers granted it under 15 U.S.C. § 1118 and at common law, order that all merchandise, labels, banners, signs, clocks, prints, packages, wrappers, receptacles, advertisements, and any other tangible items in the possession of Defendant bearing any of Chevron's Texaco Marks, or trademarks confusingly similar thereto, shall be delivered up and destroyed;

7.	That costs of this action be awarded to Chevron; and

8.	That the Court grant such other and further relief as it deems just and reasonable.

Dated:  April 8, 2010		s/ Jeffrey A. Ehrich_____
		Timothy P. Griffin (#285717)
		Jeffrey A. Ehrich (#0345921)

		**LEONARD, STREET AND DEINARD**
		  Professional Association
		150 South Fifth Street, Suite 2300
		Minneapolis, Minnesota  55402
		Telephone:  (612) 335-1500
		Facsimile: (612-335-1657

		**ATTORNEYS FOR PLAINTIFFS**